# Richmond.

CAROLINA, CLINCHFIELD AND OHIO RAILWAY v. BOARD OF
SUPERVISORS OF SCOTT COUNTY.

January 14, 1909.

1. APPEAL AND ERROR—*Mandamus—Adequate Remedy.*—The pendency
of a writ of error to the ruling of a circuit court dismissing the
appeal of a railroad company from the refusal of the board of
supervisors of a county to act upon its petition asking the
board's consent to a proposed alteration of a county road, is no
bar to the prosecution of a writ of error to the ruling of said
circuit court refusing to award to said railroad company a
mandamus to compel the board to take action on said petition.
The writ of error in the first case is neither an adequate nor a
proper remedy.

2. MANDAMUS—*Function of Writ—Adequate Remedy.*—Mandamus will
not lie in favor of a party who has another clear and adequate
legal remedy, but the "adequate remedy" which will bar manda-
mus must be such as reaches the end intended, and actually
compels the performance of the duty in question. It must be
equally as convenient, beneficial and effective as the proceeding
by mandamus. The function of the writ of mandamus is to en-
force the performance of duties growing out of public relations,
or imposed by statute, or in some respect involving a trust or
official duty.

3. RAILROADS—*Change of County Road—Consent of Supervisors—Man-
damus.*—Before a railroad or other public service corporation can
alter a county road, it must first obtain the consent of the board of
supervisors of the county to the proposed alteration, and, upon
proper application, it is the duty of the board, in advance of the
construction of the proposed railroad, to consent or refuse to con-
sent to the proposed change of route. leaving the matter of con-
struction, grade, etc., to be fixed upon and carried out after-
wards. If application is made for such consent, and the board
simply refuses to act, the proper remedy is mandamus to compel
the board to take action by either giving or refusing its consent

to the proposed alteration. This does not in any way interfere with the discretion of the board, but simply compels action generally. The board has no right to insist that the proposed new road shall be constructed before it will give or refuse consent to the proposed change.

Error to a judgment of the Circuit Court of Scott county refusing to award a mandamus in favor of the plaintiff in error against the defendant in error.

*Reversed.*

Error to a judgment of the Circuit Court of Scott county dismissing an appeal from the action of the board of supervisors of said county refusing to act upon a petition filed by the plaintiff in error.

*Dismissed.*

The opinion states the case.

*Phlegar & Powell, Irvine & Morison* and *H. G. Morison,* for the plaintiff in error.

*W. S. Cox* and *J. P. Corns,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The controversy in these cases, submitted together to this court for decision, is presented in two phases. Plaintiff in error is constructing a line of railroad, pursuant to its charter, through the county of Scott, a part of which, especially between Wood's post-office and the residence of one J. N. Cocke, has been located and will be constructed along the side of a high and steep ridge or mountain, a part of the way just north of and adjoining a county road, the conformation of the land being such that it is necessary to use the location named for the line of railroad. The county road is immediately on the north bank of Clinch river, and at places is below the high water mark, and

in case of high water is at times impassable; the distance be-
tween the points mentioned, viz.: Wood's post-office and J. N.
Cocke's residence, being about one mile, and there will be two
railroad tracks, one to be used as the main line and the other
as a siding for passing trains, and the railroad will at some
points be above the present county road, at other points a little
below, at others on the same level with it, and will necessarily
cross the present county road at or near Wood's post-office and
also at or near the residence of J. N. Cocke.

This situation in all of its details, together with maps show-
ing the proposed route for a new road for use by the public in
lieu of the present road, was presented to the board of super-
visors of Scott county in a petition filed by the railroad com-
pany, praying that petitioner be permitted to alter the county
road and locate it upon a well defined route, as shown by the
maps filed, the proposed new road to be located and constructed
wholly at the cost of the petitioner. But the board of super-
visors refused to entertain the petition at all, on the ground
that it had no jurisdiction to do so until the petitioner had
actually constructed a new road and offered it to the county;
in other words, the board of supervisors ruled that petitioner
must acquire the right of way for a new county road, and incur
the expense of constructing that road, before the board could
ascertain whether it would consent or refuse to consent to the
change of the location of the road at all, or if at all to the route
adopted by the petitioner, and if the route was acceptable,
whether it would or would not consent to the grades, bridges
and construction methods adopted.

From this refusal of the board of supervisors to act in the
premises, the petitioning railroad company appealed to the
Circuit Court of Scott county, which appeal was, on motion of
the board, dismissed, on the ground that petitioner's remedy
was by mandamus. Whereupon, a mandamus was applied for
and refused by the same court, and to this ruling, as well as to
the ruling dismissing the appeal of the railroad company from

the refusal of the board of supervisors to act upon its petition, a writ of error was allowed by this court.

The first question presented is whether or not mandamus is the proper remedy in such a case, and, if the proper remedy, should it, upon the case presented to the circuit court, have been awarded?

There is no force in the contention of defendant in error that the pendency of the writ of error to the ruling of the circuit court dismissing the appeal of plaintiff in error from the refusal of the board of supervisors to act upon its petition asking the board's consent to the proposed alteration of the location of the present county road is a bar to the prosecution of the writ of error to the ruling of the circuit court refusing the writ of mandamus.

This contention is not sustained by the case of *Supervisors* v. *Powell*, 95 Va. 635, 29 S. E. 682, relied on. That case does hold that where originally there is another clear and adequate legal remedy, mandamus cannot be invoked; but the "adequate remedy" which will bar mandamus must be such as reaches the end intended and actually compels the performance of the duty in question. It must be equally as convenient, beneficial, and effective as the proceeding by mandamus. The function of the writ of mandamus is to enforce the performance of duties growing out of public relations, or imposed by statute, or in some respect involving a trust or official duty. *Richmond Ry. & Elec. Co.* v. *Brown*, 97 Va. 26, 32 S. E. 775.

Plaintiff in error presented by petition and exhibits to the board of supervisors the facts as to the dangers to be incurred by travelers on the county road between the crossings at Wood's post-office and near the residence of J. N. Cocke, as well as to the travelers on passing trains, also the dangers of collision of trains with persons and vehicles at these crossings, and submitted a plan for the construction of a new road leaving the river and railroad at or near the post-office, and built around the mountain on a firm and stable location, where a good grade

can be obtained and a road equally convenient constructed in lieu of the present road, and away from all contact with or danger from the railroad; but the board would neither give nor refuse its consent to the proposed alteration.

The authority for the proposed change, or any change of the route of a county road in such a case, is found in section 1294b of the Code of 1904, which section, so far as it applies to this case, is as follows: "* * * but any county road * * * may be altered by any such company (public service corporation) for the purposes aforesaid (avoiding or reducing the number of crossings) whenever it shall have made an equally convenient road * * * in lieu thereof, the said company having first obtained the consent of the board of supervisors of the county to the alteration of the road or highway."

All statutes must receive a reasonable construction, and we are unable to concur in the view of the statute just quoted taken by the board of supervisors in this case and approved by the judge of the circuit court, the effect of which is that the right of way for the new road must be obtained and the new road actually constructed, no matter at what cost, be ready for inspection, and leave nothing to be done except the discontinuance of the old route, before the board of supervisors has jurisdiction to consider the application for the assent of the board to the alteration of the road.

A railroad company must acquire the land upon which to construct the new county road, and as it has no right to acquire land except for its necessary purposes, it may well be doubted, as the learned counsel suggests, if it would have lawful authority to acquire land for a proposed new road to take the place of an already established county highway until the assent of the board of supervisors to the alteration is first obtained. The statute must be construed so as to enable the railroad company to exercise the power conferred, though it must at the same time be so construed as not to deprive the public of their rights in the highway to any greater extent than is necessarily

implied from the power granted. *Charlottesville* v. *Railroad Co.,* 97 Va. 428, 34 S. E. 98.

The two things essential to the exercise of the statutory right in a public service corporation to alter a road are: "First," the obtaining of the consent of the board of supervisors; and the other, the making of an "equally convenient road." In other words "alteration" of a county road or highway embraces and requires, (1) a new location, (2) constructing thereon a roadway as good as the present one, (3) the discontinuance of the present road; and these three things constitute the "alteration" authorized by the statute, *supra.* The discontinuance of an existing road is not authorized till the new road is constructed, and it would be, as it seems to us, an unreasonable construction of the statute which requires a public service corporation to acquire necessary rights of way and construct the new road, and take the risk of its location as well as the proper construction thereof being rejected by the board of supervisors.

The board of supervisors in this case was fully advised as to the proposed alteration of the county road, and were only called upon to assent or refuse to assent to the alteration, and it cannot be imputed to the legislature that it intended by the provision in the statute to require, first, the construction of the new county road along the proposed route, and then have the board of supervisors to assent or refuse to assent to the alteration. If this could be maintained as the proper construction of the statute, a railroad company might construct a new county road or highway at ever so great an expense and then be not relieved of the dangers to life and property attending the location and use of the old road designed to be altered.

The statute requires the board to consent or refuse to consent to the act of altering, and if consent be given this implies something to be done in the future, viz.: the construction of an equally convenient and suitable road or highway in lieu of the old one intended to be put out of use to avoid the danger to the traveling public attending its use. The assent of the board to

the alteration of the old road does not commit it to accept the new road unless the new road is so constructed as to make it equally as convenient and useful to the public as the old one.

By the general law—sec. 944a of the Code—when a new road is to be established or an old one changed, viewers are appointed whose first and chief duty is to report on routes, and on this preliminary report the board of supervisors act, subject to appeal to the circuit court. By this plan the question of route is settled, and the question of construction, grades, etc., follows as an incident; and the law giving public service corporations the right to change county roads had always been, until the act here in question was passed, as follows: "Any county road may be altered by any such company for the purposes aforesaid (to avoid crossings, etc.), whenever it shall have made an equally convenient road in lieu thereof." When, however, the whole subject of roads was put in the care of the supervisors of the several counties, there was added this amendment to the statute: "The said company having first obtained the consent of the board of supervisors of the county to the alteration of any road or highway."

Clearly, from the very language of the statute, as well as by analogy to the general law, the duty is imposed upon the board of supervisors, as the first step and in advance, to consent or refuse to consent to the proposed change of route, leaving the matter of construction, grades, etc., to be fixed upon and carried out.

It is not contended in this case that mandamus will lie to compel the board to exercise the discretion given to it and select a particular route for the location of the highway, but that mandamus will lie to compel the board *to give or refuse to give* its consent to the alteration of a highway to a given route. Compulsion in the first instance would take away the discretion given the board, while in the second its discretion conferred by the statute would be left unimpaired, and the board merely be compelled to take action generally, i. e., give its consent to the

proposed route of the new road or refuse to give its consent. It will be observed that plaintiff in error is not seeking to compel by mandamus the defendant in error to consent to the route selected by the plaintiff in error, but merely to consent to the route proposed or refuse to consent thereto.

In *Wilder* v. *Kelly, Judge,* 88 Va. 281, 13 S. E. 483, speaking of the function of the writ of mandamus, it is said: "It is the proper remedy to compel the performance of a specific act, where the act is ministerial in its character, but where the act is of a discretionary character or of a judicial nature, it will lie to compel action generally."

And in *Broadus* v. *Supervisors,* 99 Va. 372, 38 S. E. 177, where the marked characteristics of a proceeding by mandamus are pointed out, the rule as stated in High on Ex. Rem., sec. 24, is approved, which is as follows: "Wherever such officers or bodies are vested with discretionary powers as to the performance of any duty required at their hands, or where, in reaching a given result of official action, they are necessarily obliged to use some degree of judgment and discretion, while mandamus will lie to set them in motion and to compel action upon the matters in controversy, it will in no manner interfere with the exercise of such discretion, nor control or dictate the judgment or decision which shall be reached. But if, upon the other hand, a clear and specific duty is positively required of any officer, and the duty is of a ministerial character, involving no element of discretion and no exercise of official judgment, mandamus is the appropriate remedy."

As remarked, plaintiff in error is only asking that the board of supervisors be compelled to take action generally, i. e., give its consent to the proposed alteration of the present road by the construction of a new road to be used by the public in lieu thereof, or refuse to give its consent. This would be only to set those officials in motion to take action upon the matters in controversy, and would in no manner interfere with the exercise of any discretion conferred upon them. The board would not

thereby be compelled to consent to the route selected by plaintiff in error, but merely to consent or refuse to consent thereto, a duty of a ministerial nature, involving no element of discretion.

In any other view of the statute, we would have this state of affairs: Here is a public service corporation, not only authorized by law to locate and construct a line of railroad through the county of Scott for the transportation of passengers and freight, but required to locate, construct and have the railroad in operation for the convenience of the public within a limited time, finding itself confronted by a condition dangerous, not only to the operation of trains upon a located line, but dangerous to private property and to the lives of persons traveling along a county road parallel and in close proximity to the railroad for the distance of a mile, and necessitating two dangerous crossings of the county road over the railroad, which can be dispensed with by altering the county road to another route equally convenient to the traveling public, and free of the dangers incident to the present road, it applies to the board of supervisors of the county, as authorized by the statute, for consent to alter the present road, wholly at the cost of the railroad company, and is met by a ruling that the board will take no action on the application—will neither consent nor refuse to consent to the proposed alteration of the existing county road—until the railroad company has acquired the necessary right of way for the proposed new road, constructed the same and made it ready for use by the public, and which may or may not then be accepted as in lieu of the old road; whereby, the railroad would be without adequate remedy, except by mandamus compelling the board to take the initial and essential action towards a settlement of the controversy, and which would not involve the exercise of any discretion, but the performance only of a ministerial duty plainly required by the statute.

We are of opinion that mandamus is the proper remedy in such a case, and that the circuit court erred in denying plaintiff

in error the writ in accordance with the prayer of its petition. Therefore, the judgment of the circuit court will be reversed and this court will enter the order the circuit court should have entered, awarding the writ of mandamus in accordance with the prayer of plaintiff in error's petition.

Having reached the foregoing conclusion in the first of these cases, as above named, the writ of error awarded in the second will be dismissed without costs to either party.

*Mandamus awarded.*
*Writ of error dismissed.*